## THE DON.

## THE ASHBOURNE.

### No. A–17010.

District Court, E. D. New York.
June 11, 1945.

This action having come on for trial in its regular order on the pleadings and proofs of the respective parties, and due deliberation having been had thereon, the Court makes the following:

### Findings of Fact

1. The Don is 104 feet long. Her beam is 30 feet 6 inches. Amidships her depth is 15 feet 6 inches and at the ends 17 feet.

2. The Ashbourne is 88.2 feet long. Her beam is 19 feet and her depth 10.2 feet. Her gross tonnage is 115 and her net tonnage 78 and she develops 325 horsepower.

3. On December 2, 1943 at eight o'clock in the morning, the Ashbourne prepared to shift the Don from the Creosote Pier to the dumper dock.

4. The dumper dock extends easterly into Arthur Kill. The Creosote Pier is a short distance to the north and east of the dumper dock, and extends into the Kill in a southerly direction.

5. The Don was moored starboard side to the Creosote Pier with its bow toward the bulkhead. The Ashbourne put out a headline from her own bow to the stern starboard cleat of the Don and then proceeded to back out into the stream.

6. When the Don was clear of the dock the Ashbourne stopped her engines. The momentum of the Don, even though she was light at the time, then caused the Ashbourne to swing around on her headline so that her starboard side gradually approached the starboard side of the Don.

7. At some point during this operation the Ashbourne put out a strap from its towing bitt through a hawse pipe which was made fast to a cleat on the starboard quarter of the Don. The Ashbourne then went ahead and landed the Don alongside the dumper dock port side to.

8. Before the Don was secured to the dumper dock her bargee, Steen, complained to Kelly, the tug captain, that the Ashbourne had been in violent collision with the Don.

9. The Don was immediately inspected. She had not been damaged, but there was a black smudge on her starboard side well above the water line, and about 20 feet from the stern.

10. Thereafter, and between December 2, 1943 and January 18, 1944, the Don carried six cargoes of coal from Port Reading to New York.

11. On January 18, 1944 the Don was surveyed. Her bottom planks and four of her seams had been started, the seams being both on the starboard and the port sides.

12. This damage was not caused by collision between the Don and the Ashbourne on December 2, 1943.

### Conclusions of Law.

1. The damage to the Don disclosed by the survey of January 18, 1944 was not due to any fault on the part of the Ashbourne.

2. Claimant is entitled to a decree dismissing the libel with costs.

James T. O'Donnell, of New York City, for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for claimant.

KENNEDY, District Judge.

In this case the libel alleges that on December 2, 1943, the light barge Don, then lying at the Creosote Dock, Port Reading, N. J., was damaged by the steamtug Ashbourne during a shifting operation.

The Don is 104 feet long. Her beam is 30 feet 6 inches. Amidships her depth is 15 feet 6 inches and at the ends 17 feet. The Ashbourne is 88.2 feet long. Her beam is 19 feet and her depth 10.2 feet. Her gross tonnage is 115 and her net tonnage 78 and she develops 325 horsepower.

On December 2, 1943, at eight o'clock in the morning, the Ashbourne prepared to shift the Don from the Creosote Pier to

the dumper dock. The dumper dock extends easterly into Arthur Kill. The Creosote Pier is a short distance to the north and east of the dumper dock, and extends into the Kill in a southerly direction. The Don was moored starboard side to the Creosote with its bow toward the bulkhead. The Ashbourne put out a headline from her own bow to the stern starboard cleat of the Don and then proceeded to back out into the stream. When the Don was clear of the dock the Ashbourne stopped her engines. The momentum of the Don, even though she was light at the time, then caused the Ashbourne to swing around on her headline so that her starboard side gradually approached the starboard side of the Don. At some point during this operation the Ashbourne put out a strap from its towing bitt through a hawse pipe which was made fast to a cleat on the starboard quarter of the Don. The Ashbourne then went ahead and landed the Don alongside the dumper dock port side to.

There can be no doubt that even before the Don was secured to the dumper dock her bargee, Steen, complained to Kelly, the tug captain, that the Ashbourne had been in violent collision with the Don. Steen said that he heard timbers cracking, and Kelly admits that the complaint was made.

However, when the Don was put alongside the dumper dock she was inspected immediately by carpenters acting on behalf of the claimant. They examined tht inside of the barge and also the outside, using a float. They invited Steen to participate in the examination. All that could be found was a black smudge on the starboard side of the Don, well above the water line. This smudge was about 20 feet from the stern. At the conclusion of this inspection the bargee of the Don told the carpenters "she had not showed much yet". He then proceeded to take on a load of coal. Thereafter, the Don carried six cargoes of coal from Port Reading to New York, three of which were to Roosevelt Street. These trips were carried out between December 2, 1943, and January 18, 1944, at which time the Don was surveyed. Then it was discovered that some of the Don's bottom planks and four seams had been started, both on the starboard and port side. Libelant attributes this damage to the shifting operation which had been conducted five weeks earlier.

There is but one issue in the case (a fact issue), namely, whether libelant has proved that the damage found at the survey of June 18, 1944, was caused by a violent contact between the Ashbourne and Don on December 2, 1943. To determine this issue it is necessary to choose between the testimony of Kelly on the one hand, or of Steen on the other. Kelly, the tug captain, says that the Ashbourne merely drifted around until it was alongside the Don. Steen claims that when the Ashbourne was almost at right angles with the Don she went ahead full speed on her headline and thus swung violently around into the side of the Don. I accept the testimony of Kelly, despite the fact that Steen promptly complained that his barge had been damaged. I do this because it seems unlikely that Kelly performed any such senseless maneuver as Steen described. If he had, the inspection which was made immediately afterward would have inevitably disclosed some physical evidence of damage. Moreover, considering the burden that is upon the libelant, the lapse of five weeks after the alleged damage, during which the Don carried out six trips is certainly mute evidence that contradicts any theory of a violent collision on December 2, 1943. In addition, that lapse of time introduces conjecture about what really caused the barge's planks to start.

I cannot say that libelant has sustained its burden. Claimant is entitled to a decree dismissing the libel with costs. Findings of fact and conclusions of law are filed herewith.